Tagged

ORDERED in the Southern District of Florida on 05/13/10.



*Raymond B. Ray*
Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

| | |
|---|---|
| In re: | Case No. 09-34791-BKC-RBR |
| ROTHSTEIN ROSENFELDT ADLER, P.A., | Chapter 11 |
| Debtor._____/ | |
| HERBERT STETTIN as Trustee, | Adv. No. 09-2549-BKC-RBR-A |
| Plaintiff, | |
| vs. | |
| STEVEN N. LIPPMAN and MARCY LIPPMAN, | |
| Defendants._____/ | |

### ORDER GRANTING THE MOTION TO INTERVENE
### FILED BY THE DAILY BUSINESS REVIEW

THIS MATTER came before the Court for hearing on April 21, 2010, upon the Motion to Intervene for the Purpose of Enforcing Right to Attend Depositions (the "Motion to Intervene") [D.E. 63] filed by *The Daily Business Review* (the "DBR"), a South Florida newspaper. The Motion to Intervene requests that the DBR be allowed to intervene in this adversary proceeding for the limited purposes of (i) attending depositions, and/or (ii) obtaining the transcripts of any

Page 1 of 8

depositions that it is prohibited from attending. After hearing from counsel and reviewing the contents of the case file, the Court will grant the Motion to Intervene.

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioning creditors Roger Wittenberns, Bonnie Barnett, Aran Development, Inc. and Universal Legal filed an involuntary petition under chapter 11 of the Bankruptcy Code against Rothstein Rosenfeldt Adler, P.A. ("RRA" or the "Debtor") on November 10, 2009. The Court entered an order for relief on November 30, 2009.

Trustee Herbert Stettin (the "Trustee") initiated this adversary proceeding against Steven Lippman and Marcy Lippman (collectively, the "Lippmans") on December 29, 2009, seeking to avoid and recover alleged fraudulent transfers of property.

The Lippmans filed an Emergency Motion for Protective Order (the "Emergency Motion") [D.E. 33] on March 24, 2010. Citing the possibility of a deposition revealing details of the Lippmans' personal lifestyle and the nature of attorney-client relationships Mr. Lippman had while associated with RRA, the Emergency Motion requested that the Court limit access to the Lippmans' depositions, deposition transcripts, and deposition exhibits. The Court ruled from the bench after a March 29, 2010 hearing on the Emergency Motion, and entered an order memorializing its ruling (the "Order") [D.E. 40] on March 31, 2010. The Order granted the Emergency Motion in part, ruling that (i) the press and public were not entitled to attend the depositions of the Lippmans (which were then scheduled for April 2 and April 9, 2010), but (ii) upon transcription, Trustee's counsel would make the deposition transcripts available to the press and public.

The DBR filed the Motion to Intervene on April 13, 2010.

At the April 21, 2010 hearing on the Motion to Intervene, the DBR argued that a litigant or witness must meet a "compelling reasons" standard to obtain a court order barring the press

or public from a deposition in a civil action. The DBR contended that the only basis given by the Lippmans for limiting access to the depositions was the embarrassment of airing details of the case in advance of trial, and that this did not satisfy the compelling reasons standard.

## II. ANALYSIS

The issues before the Court are (i) whether the DBR has standing to intervene; (ii) what standard should be used in determining if the press or public may be barred from a deposition in a civil action; and (iii) whether the DBR may attend depositions in this adversary proceeding and/or obtain the transcripts of any depositions that it is prohibited from attending. The Court will address each of these issues in turn.

### A.    The DBR has standing to intervene.

"The press has standing to intervene in actions to which it is not a party in order to petition for access to court proceedings and records." *Tribune Co. v. United States*, 784 F.2d 1518, 1521 (11th Cir. 1986); *see also United States v. Valenti*, 987 F.2d 708, 711—12 (11th Cir. 1993); *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983). The DBR may therefore intervene in this adversary proceeding for the purpose of petitioning for access to court proceedings and records.

### B.    The Lippmans do not need to demonstrate "compelling reasons" to limit access to their depositions.

The Lippmans moved to limit access to their depositions pursuant to Fed. R. Civ. P. 26(c), which provides that a court may, "for good cause, issue an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense".[1] The party seeking protection, in this case the Lippmans, bears the burden of demonstrating good cause. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d. 1304, 1313 (11th Cir. 2001). "Federal courts have superimposed a balancing of

---

[1] Fed. R. Bankr. P. 7026 applies Fed. R. Civ. P. 26 in adversary proceedings.

interests approach for Rule 26's good cause requirement. This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Tribune Co.*, 263 F.3d at 1313 (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)).

The DBR and Trustee have cited two authorities in support of employing an elevated "compelling reasons" standard rather than balancing the parties' interests when determining whether to limit deposition access under Rule 26.

First, the Discovery Practices Handbook (the "Handbook"), adopted as a published appendix to the Local Rules of the United States District Court for the Southern District of Florida, provides, "As a general proposition, pretrial discovery in civil matters must take place in public unless compelling reasons exist for denying the public access to the proceedings" (Handbook § II.A.(2)). However, the Court does not find this authority persuasive. Even if one were to look beyond the phrase "as a general proposition," Administrative Order 96—36, which adopts the Handbook as an appendix to the Local Rules, clearly states, "The practices set forth in the [Handbook] shall not have the force of law," and, "In the event of any conflict between the provisions of the [Handbook] and applicable case, rule, or statutory law, counsel should look first to the applicable authority to determine proper discovery practice" (Administrative Order ¶¶ 2—3). The Court thus cannot assign any persuasive value to the Handbook in the context of this discussion.

Second, the DBR and Trustee have cited two cases by United States Bankruptcy Judge A. Jay Cristol: *Kapila v. Bankest Capital Corp. (In re Bankest Capital Corp.)*, 2007 Bankr. LEXIS 419 (Bankr. S.D. Fla. 2007) and *In re Thrifty Dutchman, Inc.*, 97 B.R. 111 (Bankr. S.D. Fla. 1989). In the *Thrifty Dutchman* case, Judge Cristol stated that "depositions are public proceedings to which the public has access unless compelling reasons exist for denying

Page 4 of 8

access," and allowed a member of the public to attend "depositions noticed and conducted in this or any bankruptcy proceeding." 97 B.R. at 111. The *Bankest* opinion employed the compelling reasons standard of *Thrifty Dutchman*, stating that since the movants for a protective order had not cited "privileged or otherwise proprietary or confidential information" they feared would be disclosed at a deposition, their motion for a protective order was denied. *Bankest Capital Corp.*, 2007 Bankr. LEXIS 419 at *3—6.

This Court respectfully disagrees with the *Thrifty Dutchman* and *Bankest* opinions. The Supreme Court of the United States has stated that "pretrial depositions and interrogatories are not public components of a civil trial." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). This fact, in conjunction with the balancing of interests approach that the Eleventh Circuit Court of Appeals has stated is "superimposed" on Rule 26's good cause requirement, leads this Court to reject the compelling reasons standard advocated by the DBR and Trustee. *See Chicago Tribune Co.*, 263 F.3d at 1313. Accordingly, the Court will balance the parties' interests against each other in determining whether the Lippmans have met the good cause requirement of Rule 26(c). *See id.*

### C. The Lippmans have not met their burden under Rule 26(c).

"Public disclosure of discovery material is subject to the discretion of the trial court and the federal rules that circumscribe that discretion." *Chicago Tribune Co.*, 263 F.3d at 1310. As stated, the Court will employ a balancing of interests test to determine whether the Lippmans have demonstrated good cause exists for a protective order under Rule 26(c). The Court notes that to meet their burden of demonstrating good cause, the Lippmans must demonstrate "a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *See Cippollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986).

The Emergency Motion states that "it is expected that the [Trustee] will inquire into matters that are not directly relevant to the issues to be tried in this case and that will never be presented in the court file. These matters include the Lippmans' lifestyle, the nature and value of specific attorney-client relationships that Mr. Lippman had at [RRA] and his prior firm, and the income of Mr. Lippman and his partners at the firm where he worked before joining [RRA]" (Emergency Mot. ¶ 4).

The Court notes that Mr. Lippman was an important figure at RRA; the actions he took while at RRA that are the subject of this adversary proceeding were carried out in the public domain and are apparently tied to the largest Ponzi scheme in the history of South Florida. Having so acted, the Lippmans cannot cry foul at the public interest in their activities. Given the highly public nature of both the Ponzi scheme and RRA bankruptcy, the DBR has an interest in reporting the Lippmans' deposition proceedings to the public.

Additionally, at the hearing on the Emergency Motion, James Silver, counsel for creditors whose claims total some $110 million in this bankruptcy case, stated the following:

> Your Honor, I respect Mr. Scott [counsel for the Lippmans] greatly, but I could not disagree any more with the comments trying to put this case in the context of a low public interest in attempting to trivialize it as some sort of theater.
>
> In my 28 years of practice I have never seen facts like this before, where you have a major law firm in South Florida, where the leader of that law firm uses the law firm as a front for the Ponzi scheme. Reportedly over a billion dollars went through that Ponzi scheme. Fabrication of a court order. The entire Ponzi scheme is based on the legal system and that they are fabricating these fictitious legal settlements. So what they have done through Mr. Rothstein's use of this law firm is they have undermined the public's confidence in the legal system. There are also issues relating to the political system and contributions made through the RRA firm.
>
> I cannot think of a case with more public importance and more compelling reasons why everything in this case should be transparent and should be designed to help restore public confidence in the legal system as opposed to risking further eroding that confidence.

Hr'g Tr. 26.

The Court, after balancing the interests articulated by the Lippmans, the Trustee, the DBR and Mr. Silver, believes that the Lippmans have not met their burden under Rule 26(c). This finding is based upon the vagueness of many of the concerns put forth by the Lippmans, the public nature of Mr. Lippman's actions when he was associated with RRA, and the need for transparency in this bankruptcy case following the collapse of the largest Ponzi scheme in the history of South Florida.

### III. CONCLUSION

In light of the foregoing, it is

**ORDERED** as follows:

1. The Motion to Intervene [D.E. 63] is **GRANTED** as set forth below.

2. The DBR may intervene in this adversary proceeding for the purpose of petitioning for access to court proceedings and records.

3. Members of the press and public shall be entitled to attend the Lippmans' depositions, subject to the limitations below.

    A. A properly credentialed reporter may attend the Lippmans' depositions; however, no tape or digital recorder will be allowed in the depositions. The court reporter's transcript will be the only and official record.

    B. No reporter or member of the public shall make any oral comment whatsoever while the deposition is proceeding or otherwise take any actions that would cause the slightest disruption to the deposition proceeding. This includes recommending, requesting, or passing questions to counsel.

    C.    Assuming the depositions occur at the offices of counsel for the Trustee, the press or public shall physically sit where directed by counsel for the Trustee.

    D.    Following the transcription of the deposition testimony, the Trustee shall post a copy of the transcript on the Trustee's website being used for administration of this case.

4. This order modifies the March 31 Order to any extent the two orders are inconsistent.

5. The Court reserves jurisdiction to enter all such other orders as are necessary to enforce the provisions of this order or to otherwise give it its full meaning and effect.

###

The Clerk shall provide copies to:

Jose Casal, Esq.
Charles Lichtman, Esq.
Patrick Scott, Esq.